**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

DAN DEE INTERNATIONAL, LLC,
DANDEE HONG KONG HOLDINGS
LIMITED, and DAN DEE
INTERNATIONAL HOLDINGS, INC.,

                          Plaintiffs,

                  v.

GLOBAL NEW VENTURES GROUP LC,
LEE CAPOZZI, and PATRICK LEE,

                          Defendants.

Civil Action No. 23-1274-GBW

---

## <u>MEMORANDUM ORDER</u>

Pending before the Court is Defendant Global New Ventures Group LC's ("GNV" or

"Defendant") Motion to Dismiss Plaintiffs Dan Dee International, LLC, DanDee Hong Kong

Holdings Limited, and Dan Dee International Holdings, Inc.'s (collectively, "Plaintiffs" or "Dan

Dee") First Amended Complaint, D.I. 13, for lack of personal jurisdiction and improper venue.

D.I. 19, D. I. 20.  Plaintiffs oppose the Motion to Dismiss on grounds that GNV subjected itself

to the Court's jurisdiction by engaging in a fraudulent scheme that ultimately harmed Delaware

corporations.  D.I. 23.  Alternatively, if the Court finds a prima facie showing of personal

jurisdiction has not been made as to GNV, Plaintiffs maintain that they are entitled to limited

jurisdictional discovery.  *Id.*  Having reviewed the Motion to Dismiss and all relevant briefing,

the Court finds that limited jurisdictional discovery is warranted.  Accordingly, Defendant

GNV's Motion to Dismiss, D.I. 19, is **DENIED** without prejudice.

## I.      BACKGROUND

On November 8, 2023, Plaintiffs commenced this action against two former Dan Dee executives, Defendant Patrick Lee ("Lee") and Defendant Lee Capozzi ("Capozzi"), and their new employer, Global New Ventures Group LC ("GNV") (together, "Defendants"), "to protect its highly valuable intellectual property, trade secrets, and confidential information, as well as to protect its longstanding and prized customer relationships." D.I. 1, ¶ 1. Plaintiffs allege that Lee and Capozzi, while still employed with Dan Dee, entered a conspiracy with GNV to steal and misappropriate Dan Dee's copyrighted product designs, trade secrets, and other confidential information to solicit business from Dan Dee's retail customers. D.I. 13, ¶ 1.

Plaintiffs Dan Dee manufacture stuffed animals and other plush toys have long-standing relationships with major U.S. retailers, such as Walmart, that sell Plaintiffs' products to their customers. *Id.*, ¶ 2. According to Plaintiffs, "to protect its investments, Dan Dee takes affirmative steps to safeguard its confidential customer data, including by restricting access and requiring employees to execute agreements containing restrictive covenants, including non-disclosure and confidentiality obligations." *Id.*, ¶ 3. Thus, Capozzi and Lee, as two of Dan Dee's high-level executives, both executed employment agreements with Dan Dee that obligated Capozzi and Lee to safeguard Dan Dee's confidential information from disclosure. *Id.*, ¶ 4. Also included in the employment agreements were non-solicitation and non-competition restrictions that prohibited Capozzi and Lee from working with Dan Dee's competitors and soliciting Dan Dee's clients. *Id.*, ¶¶ 37-40. According to Plaintiffs, the employment agreements also included forum selection

provisions that assigned any disputes arising from or regarding the agreements to the jurisdiction of a Delaware court.[1]  *Id.*, ¶¶ 17, 19.

Despite their obligations to abide by the restrictive covenants in their respective employment agreements, Plaintiffs allege that Capozzi and Lee departed from Dan Dee in April and May 2023, respectively, to work for GNV, one of Dan Dee's competitors.  *Id.*, ¶¶ 13-14. According to Plaintiffs, an investigation conducted by Dan Dee sometime after revealed that Capozzi and Lee engaged in an illicit scheme to misappropriate Dan Dee's sketches to the benefit of GNV.  *Id.*, ¶ 5.  Plaintiffs allege that, in a recovered email from June 27, 2023, for instance, Plaintiffs learned that Lee contacted one of Dan Dee's largest retail clients, Walmart, and "brazenly provided Walmart with a set of product sketches that he had clearly pilfered from Dan Dee."  *Id.* Plaintiffs' investigation similarly uncovered emails in which Lee provided Capozzi with photographs of Dan Dee's stuffed animals and plush toys from the prior Valentine's Day, Easter, Halloween and Christmas seasons.  *Id.*  Finally, Plaintiffs allege that, on at least one occasion, Lee shipped to Capozzi a box of Dan Dee plush toys "to supply a blueprint for further merchandise that Capozzi and Lee would use for the benefit of GNV and to the detriment of Dan Dee."  *Id.*, ¶ 64.

According to Plaintiffs, by engaging in unauthorized and fraudulent conduct to misappropriate Dan Dee's confidential, proprietary, and trade secret information, Lee and Capozzi violated the terms of their employment agreements.  *Id.*, ¶ 128.  Plaintiffs allege that GNV knew or should have known that Capozzi and Lee were each subject to various contractual obligations. Moreover, according to Plaintiffs, GNV targeted Capozzi and Lee because they were senior

---

[1] According to Plaintiffs, Capozzi reaffirmed his obligation to protect Dan Dee's confidential information as part of a severance agreement when he departed from the company in April 2023. D.I. 13, ¶ 18.

executives at Dan Dee. *Id.*, ¶ 20(vi)(A)-(B). Thus, Plaintiffs contend that GNV was "intricately involved" in Lee and Capozzi's scheme to misappropriate Dan Dee's property and poach Dan Dee's major retail customers. *Id.*, ¶ 81; D.I. 23 at 6. On July 17 and July 18, 2023, counsel for Dan Dee sent letters to Capozzi, Lee, and GNV requesting that each cease and desist from any further improper use and dissemination of Dan Dee's confidential, proprietary information and copyrighted works. D.I. 13, ¶¶ 6-7.

Pursuant to the Delaware choice of law provisions in Capozzi and Lee's agreements, Plaintiffs filed suit against Lee and Capozzi before this Court, raising claims against both men for copyright infringement, breach of contract, and unfair competition. *Id.*, ¶¶ 17-19. Plaintiffs similarly brought five causes of action against GNV, in particular (i) copyright infringement, (ii) violation of the Federal Defend Trade Secrets Act, (iii) unfair competition, (iv) conversion, and (v) conspiracy to convert property.

On January 26, 2024, Defendant GNV made a special appearance for the limited purpose of moving this Court to dismiss the First Amended Complaint. D.I. 20. According to GNV, dismissal is warranted because the Court lacks personal jurisdiction over GNV, an Arkansas corporation with its principal place of business in Arkansas that "does not sell items to any company having a principal place of business in Delaware," "does not have any offices, employees, agents, mailing address, or telephone numbers in Delaware," and "was unaware of any restrictive covenants or forum selection clauses" when it hired Capozzi and Lee. *Id.* at 1-2. For similar reasons, GNV argues that Delaware is not a proper venue for the litigation. *Id.* at 3.

## II.    LEGAL STANDARD

### A. Personal Jurisdiction Under Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) requires the Court to dismiss any case in which

it lacks personal jurisdiction. Fed. R. Civ. P. 12(b)(2); *E.I. DuPont de Nemours & Co. v. Rhodia

Fiber & Resin Intermediates*, 197 F.R.D. 112, 119 (D. Del. 2000). The determination of whether

the court has personal jurisdiction over a party requires a two-part analysis. *E.I. DuPont de

Nemours*, 197 F.R.D. at 119. First, the court must determine whether a defendant's actions fall

within the scope of a state's long-arm statute. *Id.* Second, the court must determine whether the

exercise of jurisdiction comports with the Due Process Clause of the Constitution. *Id.* "The

Delaware long-arm statute, 10 Del. C. § 3104(c), is to be broadly construed to confer jurisdiction

to the maximum extent possible under the Due Process Clause." *Kabbaj v. Simpson*, 547 F. App'x

84, 86 n.6 (3d Cir. 2013) (citing *LaNuova D & B, S.p.A. v. Bowe Co.*, 513 A.2d 764, 768 (Del.

1986)); *see also Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d

Cir. 2010); *RMG Media, LLC v. iBoats, Inc.*, No. 20-290-RGA, 2021 WL 1227730, at *2 (D. Del.

Mar. 31, 2021) (citing *AstraZeneca AB v. Mylan*, 72 F. Supp. 3d 549, 552 (D. Del. Nov. 5, 2014)).

Constitutional due process is satisfied if "sufficient minimum contacts exist between the

defendant and the forum state to satisfy traditional notions of fair play and substantial justice."

*TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 641 (D. Del. 2008); *see also

Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316

(1945). "In undertaking this 'minimum contacts' analysis, the Supreme Court has focused on the

nature and extent of 'the defendant's relationship to the forum State.'" *RMG Media*, 2021 WL

1227730, at *2 (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.*,

137 S.Ct. 1773, 1779 (2017)). The purpose of this requirement is to ensure that "defendant's

conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *TriStrata Tech.*, 537 F. Supp. 2d at 641 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

"The plaintiff bears the burden of establishing that the defendants are properly subject to the court's jurisdiction." *Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 263 F. Supp. 3d 498, 502 (D. Del. 2017). If no evidentiary hearing has been held, a plaintiff "need only establish a prima facie case of personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir.2007). A plaintiff "presents a prima facie case for the exercise of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992). On a motion to dismiss for lack of personal jurisdiction, "the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir.2004). A court is always free to revisit the issue of personal jurisdiction if it later is revealed that the facts alleged in support of jurisdiction are in dispute. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 331 (3d Cir.2009).

### B. Venue

A civil action may be brought in: (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. 28 U.S.C. § 1391(b).

## III.   ANALYSIS

While Defendant GNV is a non-resident of the state of Delaware, Plaintiffs contend that

GNV subjected itself to jurisdiction in Delaware by engaging in a Delaware-directed scheme

with Defendants Capozzi and Lee to convert Dan Dee's intellectual property.  D.I. 23 at 2.  Thus,

according to Plaintiffs, jurisdiction is proper over GNV under the conspiracy theory of

jurisdiction.  *Id.* at 7-8.

The Delaware Long-Arm Statute provides that, "[a]s to a cause of action brought by any

person arising from any of the acts enumerated in this section, a court may exercise personal

jurisdiction over any nonresident . . . who in person or through an agent: (1) Transacts any

business or performs any character of work or service in the State . . . ."  10 Del. C. § 3104(c).

Under Delaware law, a foreign defendant may be subject to jurisdiction in the state, despite

lacking direct forum contacts of its own, where it acts as part of a scheme in which others

engaged in Delaware-directed activity.  *Istituto Bancario Italiano SpA v. Hunter Eng'g Co.*, 449

A.2d 210, 225 (Del. 1982).  "The conspiracy theory subjects a conspirator who is absent from the

forum to the jurisdiction of the court if five requirements are met."  *G & G LLC v. White*, 535

F.Supp.2d 452, 464 (D.Del.2008).  Under the five elements of conspiracy theory jurisdiction

(hereinafter, the "*Istituto Bancario* factors"), a plaintiff must show that:

> (1) a conspiracy to defraud existed; (2) the defendant was a member of that
> conspiracy; (3) a substantial act or substantial effect in furtherance of the
> conspiracy occurred in the forum state; (4) the defendant knew or had
> reason to know of the act in the forum state or that acts outside the forum
> state would have an effect in the forum state; (5) the act in, or effect on, the
> forum state was a direct and foreseeable result of the conduct in furtherance
> of the conspiracy.

*Id.*  "Delaware courts construe this test narrowly and require a plaintiff to assert specific facts,

not conclusory allegations, as to each element."  *Hartsel v. Vanguard Grp., Inc.*, 2011 WL

2421003, at *10 (Del.Ch. June 15, 2011); *see also Computer People, Inc. v. Best Int'l Grp., Inc.*, 1999 WL 288119, at *6 (Del.Ch. Apr. 27, 1999) (opining that if conspiracy theory is not strictly construed it could "become a facile way for a plaintiff to circumvent the minimum contacts requirement of *International Shoe Co. v. Washington*").

Here, Plaintiffs contend that each of the five *Istituto Bancario* factors are present.  D.I. 23 at 9.  Alternatively, if the Court finds that the factors are not met, Plaintiffs contend that they should be permitted to engage in jurisdictional discovery.  *Id.* at 14.  While the Court finds that the First Amended Complaint does not allege sufficient facts to establish personal jurisdiction under a conspiracy theory, the Court agrees that limited jurisdictional discovery is warranted. Thus, as explained in more detail below, GNV's Motion to Dismiss is DENIED without prejudice.

> A. *Plaintiffs fail to make a prima facie showing of personal jurisdiction under a conspiracy theory.*

As to the first two *Istituto Bancario* elements, Plaintiffs argue that the First Amended Complaint sufficiently pleads that GNV was a member of a conspiracy alongside Capozzi and Lee and that the parties sought to defraud Plaintiffs by converting Dan Dee's intellectual property.  *Id.* at 9.  The Court agrees that both factors are satisfied.  The First Amended Complaint alleges that "GNV, Capozzi, and Lee acted in concert to wrongfully misappropriate and improperly access and retain Dan Dee's trade secrets, copyrighted information, other confidential information, and samples of stuffed animals and plush toys."  D.I. 13, ¶ 20(a).  The First Amended Complaint also asserts that "GNV knowingly received, and exercised dominion over, Dan Dee's tangible property that embodied the copyrights owned by Dan Dee Holdings Limited, in denial of or inconsistent with Dan Dee's property rights in the tangible property." *Id.*, ¶ 20(e)(ii).  These allegations are sufficient to assert that GNV engaged in a civil conspiracy

for purposes of establishing personal jurisdiction under a conspiracy theory. *Matthew v. Laudamiel, 2012 WL 605589*, at \*7-8 (Del. Ch. Feb. 21, 2012) ("To plead a claim of civil conspiracy, [plaintiff] must allege facts establishing the following elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds between or among such persons relating to the object or a course of action; (4) one or more unlawful acts; and (5) damages as a proximate result thereof. [Plaintiff] need not allege 'the existence of an explicit agreement; a conspiracy can be inferred from the pled behavior of the alleged conspirators.'") (internal citations omitted).

Plaintiffs next contend that the third *Istituto Bancario* factor is satisfied for at least three reasons. D.I. 23 at 23. First, Plaintiffs argue that, under Delaware law, "[a] corporation sustains injury where it is incorporated and where it has offices." D.I. 23 at 10 (citing *Grynberg v. Total Compagnie Francaise Des Petroles*, 891 F. Supp. 2d 663, 680 (D. Del. 2012)). Because Plaintiff Dan Dee International Holdings, Inc., the owner of the intellectual property allegedly misappropriated by GNV, and Plaintiff Dan Dee International, LLC, the corporation that employed Capozzi, are both Delaware corporations, Plaintiffs contend that the brunt of GNV's conspiratory misconduct "was aimed at Delaware incorporated entities." *Id.*

The third *Istituto Bancario* factor, however, requires a plaintiff "to show 'the actual occurrence ... in Delaware of a substantial act or effect in furtherance of the conspiracy.'" *Osco Motors Co., LLC v. Marine Acquisition Corp.*, No. CV 13-868-RGA/MPT, 2014 WL 2875374, at \*10 (D. Del. June 24, 2014) (internal citations omitted). "In the case of Delaware corporations having no substantial physical presence in this State, an allegation that a civil conspiracy caused injury to the corporation by actions wholly outside this State *will not* satisfy the requirement found in the Supreme Court's opinion in *Instituto* [] of 'a substantial effect ... in the forum

9

state.'" *Id.* (internal citations omitted) (emphasis added). Thus, Plaintiffs' claim that GNV's conduct targeted companies incorporated in the state, without more, is insufficient to satisfy the third *Istituto Bancario* factor.

Plaintiffs argue that the third *Istituto Bancario* element is met for the additional reasons that: (1) GNV "interfered with the contractual rights of Delaware entities arising under and governed by Delaware law, [] where two of the participants in the conspiracy had expressly agreed to litigate claims in Delaware relating to these contractual rights;" and (2) GNV's conspiracy "included efforts to poach business in the state of Delaware from these Delaware entities." D.I. 23 at 10-11. For the following reasons, the Court finds that Plaintiffs have not pled sufficient support for either ground and thus fail to show that a substantial act or substantial effect in furtherance of the conspiracy occurred in Delaware.

In response to Plaintiffs' claim that GNV interfered with Plaintiffs' contractual relationship with Capozzi and Lee, GNV notes that it is not a signatory of the employment agreements that Plaintiffs seek to enforce. D.I. 20 at 8. Thus, unless Plaintiffs can show that GNV was either a third-party beneficiary or closely related to the agreements, GNV contends that it cannot be held to the agreements' Delaware forum selection provisions. *Id.*; *see also Hadley v. Shaffer*, No. Civ. A. 99–144–JJF, 2003 WL 21960406, at *4 (D. Del. 2003) (noting that non-signatory parties may be bound by a forum selection clause under Delaware law if they "are either [] third-party beneficiaries[] or closely related to the Merger Agreement"). Here, there is no dispute that GNV is not a third-party beneficiary of the employment agreements given that GNV was not named in the agreements and Plaintiffs do not allege that the agreements were intended as gifts to, or entered for the benefit of, GNV. D.I. 20 at 9-10; *Hadley*, 2003 WL 21960406, at *5 ("[I]f it was not the promisee's intention to confer direct benefits upon a third

party, but rather such third party happens to benefit from the performance of the promise either coincidentally or indirectly, then the third party will have no enforceable rights under the contract.").

The parties do dispute, however, whether GNV is sufficiently "closely related" to Capozzi and Lee's employment agreements to be subjected to the agreements' Delaware forum selection provisions. GNV contends that, given its status as a non-signatory, the Court cannot find that it is "closely related" to the employment agreements executed by Capozzi and Lee. D.I. 23 at 10. In support of this argument, GNV cites two cases in which Delaware courts refused to bind a non-signatory defendant to Delaware forum selection provisions under the "closely related" test. *Id.* at 10-13; *see also Gordian Med., Inc. v. Misty Vaughn & Curitec, LLC*, No. CV 22-319-MN-SRF, 2022 WL 1443917, at *6 (D. Del. May 6, 2022), *report and recommendation adopted sub nom. Gordian Med., Inc. v. Vaughn*, No. CV 22-319 (MN) (SRF), 2022 WL 1624124 (D. Del. May 23, 2022) (rejecting plaintiff's argument that "it was foreseeable that [defendant corporation] might be subject to the terms of the [employment] Agreements because it hired [employee] in contravention of the restrictive covenants in the Agreements"); *Triunject Corp. v. Nestle Skin Health, S.A.*, No. CV 19-592-LPS-JLH, 2019 WL 6828984, at *11 (D. Del. Dec. 13, 2019) (finding that a non-signatory did not consent to jurisdiction in Delaware pursuant to the Delaware forum selection clauses in confidentiality agreement with plaintiff and an affiliate of the non-signatory).

In *Triunject*, the court explained that it would not subject a non-signatory defendant to the court's jurisdiction under the "closely related" test because "the exercise of jurisdiction over a party bound by a forum selection clause is based on consent." *Triunject*, 2019 WL 6828984, at *11. Thus, where a party "has consented to a particular forum in a 'freely negotiated'

agreement, the party is deemed to have waived their right to challenge personal jurisdiction and no further due process 'minimum contacts' analysis is required." *Id.* The same cannot be said, however, where the defendant is a non-signatory. *Id.* In such cases, the *Truinject* court explained that "a court should not exercise jurisdiction *unless* the record otherwise demonstrates 'minimum contacts' between the defendant and the forum." *Id.* (emphasis added). After finding that plaintiff alleged that defendant benefitted only indirectly "by having its CFO review confidential information relating to a business transaction for one of its subsidiaries," the *Truinject* court found that the closely related test was not satisfied. *Id.* at *11-12. GNV contends that the same is true here given that it could not have consented to agreements that were executed before it employed either Capozzi or Lee. D.I. 20 at 11. Additionally, GNV argues that "any benefit" that it gained from employing Capozzi and Lee and accessing the confidential Dan Dee information known to them would be "no different than any follow-on employer could expect." *Id.*

Plaintiffs disagree and maintain that this matter is distinguishable from *Truinject*—as well as *Gordian Medical*—because neither case involved allegations of jurisdiction under a conspiracy theory. D.I. 23 at 12. According to Plaintiffs, GNV's participation in the conspiracy made it foreseeable that GNV would be bound by the employment agreements despite its status as a non-signatory. *Id.* at 11. The Court agrees that there is at least some distinction that can be made between this matter and the *Truinject* and *Gordian Medical* decisions, considering Plaintiffs' claims that GNV not only knew about the employment agreements prior to hiring Capozzi and Lee but also actively participated in a scheme to misappropriate Plaintiffs' intellectual property and poach Plaintiffs' clients. D.I. 13, ¶ 20. "The closely related parties doctrine is a form of equitable estoppel" and, under this doctrine, jurisdiction can be exercised if

Case 1:23-cv-01274-GBW   Document 29   Filed 06/18/24   Page 13 of 17 PageID #: 482

it was "foreseeable" from the non-signatory's conduct that it would be bound by the agreements. *Triunject*, 2019 WL 6828984, at \*12 (internal citations omitted). Thus, the Court cannot ignore these allegations in determining whether GNV's participation in a conspiracy made it foreseeable that GNV would be subject to the Court's jurisdiction.

While not binding, the Court finds *MaxLite, Inc. v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371 (D.N.J. 2016) to be instructive on this point. There, a New Jersey district court found that a non-signatory defendant was "closely related" to an employment agreement where, as here, plaintiff alleged that the non-signatory had knowledge of the employee's agreement with his prior employer and, despite its knowledge of the agreement, the non-signatory defendant collaborated with the employee to engage in an anti-competitive scheme. *Id.* at 387. In finding that the alleged relationship between the non-signatory defendant and the employee defendant was sufficient to bind the non-signatory to a New Jersey forum selection provision, the *MaxLite* court explained that the non-signatory "recruited the [e]mployee [d]efendants while they were working for [p]laintiff," with the understanding that the employee's engagement with the non-signatory could violate the restrictive covenants. *Id.* (noting that the non-signatory defendant "paid for New Jersey counsel to review the Agreements ahead of time").

The *MaxLite* court also found that the non-signatory's contacts with the forum state were made "more significant" by allegations the non-signatory defendant and the employee sought to solicit customers in the forum state. *Id.* at 387-88. Specifically, plaintiff claimed that the non-signatory "hired an independent sales representative who targeted northern New Jersey," the forum state, and instructed other sales representatives to grow its business in southern New Jersey. *Id.* Ultimately, the court found that "the facts alleged demonstrate[d] that the 'brunt of the harm' [was] felt in New Jersey," in light of allegations showing that "[plaintiff] [was]

headquartered in New Jersey, hired the [e]mployee [d]efendants in New Jersey, and signed the Agreements in New Jersey" as well as allegations that defendant "targeted [plaintiff's] business and customers in New Jersey." *Id.*

Here, Plaintiffs raise similar allegations that GNV "knew or should have known" of Lee and Capozzi's employment agreements, including "that such agreements typically contain choice-of-law provisions and forum selection clauses." D.I. 13, ¶ 82. In support of this claim, Plaintiffs contend that the agreements are "industry-standard employment agreements." *Id.* The First Amended Complaint also notes that Capozzi and Lee held senior positions at Dan Dee prior to their departure from the company. *Id.*, ¶¶ 23, 25. Given their seniority, the Court finds it reasonable to assume that GNV had some knowledge or understanding that Capozzi and Lee would be subject to non-solicitation and non-competition restrictions with Plaintiffs. Still, this falls short of providing direct evidence to support its claim that GNV knew of the employment agreements, as plaintiff alleged in *MaxLite* by, for instance, alleging that defendant hired attorneys to review the agreements. *MaxLite*, 193 F. Supp. 3d at 387.

Also like the plaintiff in *MaxLite*, Plaintiffs here allege that Defendants GNV, Lee, and Capozzi targeted Dan Dee customers in the state of Delaware by attempting to poach some of Plaintiffs' largest retail sellers. D.I. 23 at 11. In particular, Plaintiffs assert that GNV misappropriated Dan Dee's intellectual property to garner business from Walmart. *Id.* As evidence, the First Amended Complaint alleges that Defendant Lee sent Dan Dee sketches to Walmart "passing them off as belonging to GNV" on June 29, 2023. D.I. 13, ¶ 58. From the First Amended Complaint alone, however, the Court finds little support for Plaintiffs' claim that GNV targeted Plaintiffs' business in Delaware beyond Plaintiffs allegations that "the Court can properly recognize that Walmart's business encompasses locations in Delaware." D.I. 23 at 11.

While the Court agrees that Walmart has locations in the forum state, this allegation alone is insufficient to show that GNV targeted Plaintiffs' business in Delaware. Because the First Amended Complaint also lacks direct support for Plaintiffs' claim that GNV knew of the employment agreements, the Court cannot find, at this time, that a substantial effect of the conspiracy occurred in Delaware. Accordingly, Plaintiffs have not satisfied the third *Istituto Bancario* factor.

### B. *Plaintiffs are entitled to jurisdictional discovery.*

While Plaintiffs failed to make a prima facie showing that GNV is subject to conspiracy theory jurisdiction in Delaware, the Court finds that the First Amended Complaint asserts "factual allegations that suggest with reasonable particularity *the possible existence of the requisite contacts* between [] and the forum state." *Toys "R" Us, Inc. v. Step Two, SA*, 318 F.3d 446, 456 (3d Cir. 2003) (emphasis added). Thus, the Court will grant Plaintiffs' request for jurisdictional discovery.

"If a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the parties] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained." *Id.* at 456 (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992)). Jurisdictional discovery is "particularly appropriate where the defendant is a corporation." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir.2009). Ultimately, the Court must find that certain discovery avenues, "if explored, might provide the 'something more' needed" to establish personal jurisdiction. *Toys "R" Us*, 318 F.3d at 456.

Given Plaintiffs' substantiated allegations that Defendants sought to poach Plaintiffs' business from Walmart by misappropriating Dan Dee's sketches and misrepresenting Dan Dee's

designs as belonging to GNV, the Court finds that further discovery is appropriate to ascertain the extent to which GNV sought to solicit business from Dan Dee clients in Delaware. Further, as in *MaxLite*, GNV's knowledge of Lee and Capozzi's employment and separation agreements, both before and during the alleged conspiracy, may support Plaintiffs' claim that GNV satisfies the "closely related" test for establishing personal jurisdiction. *See MaxLite*, 193 F. Supp. 3d at 387. As noted above, the Court finds some support for Plaintiffs' claim that GNV knew or should have known that Lee and Capozzi were subject to employment restrictions, particularly given their senior status at Dan Dee and allegations that both Lee and Capozzi accessed and misappropriated Dan Dee's intellectual property at GNV's direction. Accordingly, the Court grants Plaintiffs limited jurisdictional discovery to determine whether the Court may exercise personal jurisdiction over GNV.

## IV.    CONCLUSION

In light of the Court's grant of limited jurisdictional discovery, Defendant GNV's Motion to Dismiss is **DENIED** without prejudice to be renewed once jurisdictional discovery has been completed.

***

WHEREFORE, at Wilmington this 18th day of June, 2024, **IT IS HEREBY ORDERED** that:

1. Defendant GNV's Motion to Dismiss (D.I. 19) is **DENIED** without prejudice.

2. Plaintiffs' request for limited jurisdictional discovery is **GRANTED**. The parties shall confer on a limited amount of jurisdictional discovery and submit a

stipulated discovery schedule embodying their agreement on or before **June 28, 2024, at 5:00 pm E.T**.

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE